## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3628 | **DATE** | 12/10/2004 |
| **CASE TITLE** | TERRANCE McCLURGE vs. UNITED STATES OF AMERICA | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. For the foregoing reasons, we deny the petition and decline to grant petitioner a new trial or an evidentiary hearing.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | DEC 13 2004 | date docketed | |
| ✓ | Docketing to mail notices. | | | 11 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE McCLURGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 04 C 3628 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

DOCKETED
DEC 1 3 2004

## MEMORANDUM OPINION AND ORDER

Petitioner Terrance McClurge (petitioner) was convicted of kidnapping, conspiracy to kidnap, and the use of a firearm during a crime of violence. He was sentenced to concurrent terms of 360 months for the first two counts and a consecutive term of 60 months for the final count. Petitioner appealed and the Seventh Circuit Court of Appeals affirmed. *See* United States v. McClurge, 311 F.3d 866 (7th Cir. 2002). He then filed a *pro se* petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, and he seeks a new trial or an evidentiary hearing. For the following reasons we deny the petition and the request for a new trial or an evidentiary hearing.

## BACKGROUND

Petitioner does not call our attention to any new facts, nor does he dispute the Court of Appeals' description of events, and we accordingly find the facts of this case to be settled. The following background is taken from the testimony at trial and is patterned after the Court of Appeals' discussion.

In the early morning hours of December 8, 1998, petitioner, accompanied by

accomplices and co-conspirators Tywon Cannon (Cannon) and Reneiko Carlisle (Carlisle),[1] kidnaped Raymond Lewis (Lewis) at gunpoint. Lewis was not a random victim. He was the brother-in-law of Allen Jimmerson (Jimmerson), who sold narcotics to drug dealers, including petitioner. Petitioner targeted Lewis because he planned to abduct someone close to Jimmerson, who petitioner knew had the funds to satisfy his ransom demands. After the kidnapping, Lewis was handcuffed and duct tape was placed over his mouth and eyes. Petitioner then drove to his mother's house, where he left Lewis in a detached garage. He next made the first of what became a series of phone calls to Jimmerson's house, making his demands for ransom. The calls continued throughout the day and were made from different locations in Chicago. For each call, petitioner would dial Jimmerson's number, but would have an accomplice do the talking, as he feared that someone at Jimmerson's house would recognize his voice. The first spokesman was Cannon, and the next was Marcus Marks (Marks). In addition to using pay phones, petitioner used a cell phone owned by Marks and another owned by Antwon Eiland (Eiland), who accompanied petitioner and Marks on that evening. By that time, unbeknownst to petitioner, the Jimmerson family had contacted the authorities and the FBI recorded several of the ransom calls.

The next day petitioner decided to take Lewis out of Chicago. Marks declined to accompany him, so petitioner then recruited his cousin, Alvertis McClurge.[2] Petitioner and his cousin then drove to Jackson, MI, and brought Lewis to the house where petitioner's girlfriend lived. Meanwhile, FBI agents had arrested Marks and Eiland after identifying them

---

[1] Cannon pled guilty to conspiracy to commit kidnapping and Carlisle was tried with petitioner and convicted of kidnapping, conspiracy to commit kidnapping, and using a firearm during a crime of violence.

[2] Alvertis McClurge was also tried with petitioner and Carlisle, but was acquitted.

as the owners of the cell phones used to call Jimmerson's house. Marks cooperated with FBI agents and accompanied them to Michigan. However, on December 11, before the agents arrived, petitioner decided to release Lewis and left him near an AMTRAK station in Detroit. Lewis peeled off the duct tape from his eyes and mouth and called a friend in Chicago, who then contacted the authorities. FBI agents eventually located Lewis at the AMTRAK station.

As the Court of Appeals noted, petitioner's theory at trial was that he did not participate in the kidnapping. The court observed that the "weight of the evidence inculpating [petitioner] was overwhelming." McClurge, 311 F.3d at 875. In support of that conclusion, the court emphasized the following evidence:

> (1) fibers taken from Lewis's clothing matched those of carpet in the home of [petitioner's] girl-friend in Jackson, Michigan; (2) the ends of the duct tape used to bind Lewis matched precisely the ends on a role of duct tape seized from [petitioner's] bedroom; (3) Lewis's gold necklace was found in the back of a Ford Explorer registered to [petitioner's] mother inside of which Lewis had been confined; (4) Lewis identified [petitioner's] voice as the voice of the man who had released him from captivity in the Detroit area; and (5) the testimony of Marks, Cannon, and Alvertis [McClurge] all identified [petitioner] as the leader of the kidnappers.

*Id.* Petitioner does not dispute any of that evidence.

On direct appeal, petitioner argued that this court committed an abuse of discretion "(1) by not granting his motion for severance; (2) by refusing to strike testimony of the prosecution's key witness; and (3) by failing to grant a new trial or evidentiary hearing based on newly discovered evidence." *Id.* at 867-68. The Court of Appeals rejected those arguments and affirmed the conviction.

In his section 2255 motion, petitioner raises a number of claims that all stem from his central thesis that he received ineffective assistance of counsel. He first claims that counsel was ineffective for failing to object to and raise on appeal the issue of the constructive amendment

of his indictment. Next he argues that counsel failed to object to instances of what he believes

were prosecutorial misconduct. Petitioner also asserts that counsel's failure to file a motion

for a new trial, based on an affidavit submitted by the lead prosecutor on the case, amounted

to ineffective assistance. Petitioner next contends that trial counsel was ineffective for not

investigating evidence and also for failing to call a specific witness. Those were the claims

contained in the petition, which petitioner later supplemented with two additional claims. In

his first supplemental claim, he argues that counsel was ineffective for not challenging the

career offender enhancement that he received at sentencing. We allowed him to add that

claim. He also argues that his sentence was invalid under Blakely v. Washington, 124 S. Ct.

2531 (2004). We instructed petitioner to raise that issue if and when the Supreme Court finds

Blakely to be retroactive.

## DISCUSSION

That a criminal defendant is entitled to effective assistance of counsel at trial is beyond

argument. To establish that he was deprived of that right, petitioner must demonstrate that

his counsel's performance fell below an objective standard of reasonableness, and that his

deficient performance prejudiced petitioner's defense and consequently denied petitioner a

fair trial. Strickland v. Washington, 466 U.S. 668 at 687-88 (1984); Fountain v. United States,

211 F.3d 429, 434 (7th Cir. 2000). Our review of trial counsel's performance is highly

deferential and we presume that his performance was not deficient. United States v. Meyer,

234 F.3d 319, 324-25 (7th Cir. 2000). But petitioner may defeat that presumption by pointing

to specific acts or omissions that show that counsel's performance was outside the realm of

"professionally competent assistance." Strickland, 466 U.S. at 690. To satisfy the prejudice

prong, petitioner must show that absent his counsel's deficient performance the outcome

would have been different. <u>United States v. Starnes</u>, 14 F.3d 1207, 1210 (7th Cir. 1994). There is no prejudice, and thus no ineffective assistance of counsel, if counsel's acts or omissions had no effect on the judgment. <u>Strickland</u>, 466 U.S. at 691. An ineffective assistance of counsel claim may be raised on collateral review without having been brought on direct appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003). Thus, petitioner may raise these claims in his habeas petition, even though he has not done so in any previous proceeding.

Turning to petitioner's claims, he first contends that the prosecution's references to drug transactions constructively amended his indictment, and that counsel was ineffective for failing to object to or raise the issue on appeal. Petitioner highlights several sections in the transcript where the government mentioned drug transactions between petitioner and Lewis (trial transcript, at 179, 80, 219-20, and 223) and Marks (tr. at 669, 674-78, 685-86, and 688). He argues that the court committed plain error by permitting what he describes as "incessant references to drug sales[,] possession and distribution" without providing a curative instruction to the jury. The government emphasizes that at trial we instructed the jury that the references to drugs were only meant to establish relationships between the parties. The government also argues that even if counsel was ineffective, petitioner has not shown prejudice. After reviewing the transcript it is clear that there was no constructive amendment.

An indictment may only be amended by re-submission to the grand jury. <u>United States v. Leicthnam</u>, 948 F.2d 370, 376 (7th Cir. 1991) (quoting <u>Russell v. United States</u>, 369 U.S. 749, 770 (1962)). Constructive amendment occurs when the indictment is amended without re-submission, such as when the offense proven at trial is different from or additional to the offense in the indictment. <u>United States v. Willoughby</u>, 27 F.3d 263, 266 (7th Cir. 1994); <u>United States v. Remsza</u>, 77 F.3d 1039, 1043 (7th Cir. 1996) ("constructive amendment occurs when

the offense proven at trial was not included within the parameters of the indictment."). Constructive amendment expands the basis for conviction beyond that authorized by the grand jury, and thus violates the Fifth Amendment. United States v. Trennell, 290 F.3d 881, 888 (7th Cir. 2003); United States v. Folks, 236 F.3d 384, 390 (7th Cir. 2001). *See also* Sitrone v. United States, 361 U.S. 212, 218 (1960) ("the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for [an offense] which the grand jury did not charge."). Either the prosecution or the court may constructively amend the indictment through evidence or with jury instructions. United States v. Jefferson, 334 F.3d 670, 673 (7th Cir. 2003). Still, the government may reference unindicted criminal activity during trial.

The Court of Appeals said that "[t]he introduction of evidence of pre-conspiratorial events does not by itself create a constructive amendment to the indictment." United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998). There is no constructive amendment when a court "admit[s] evidence of other criminal conduct that is inextricably intertwined with the charged offense or that completes the story of the charged offense." United States v. King, 126 F.3d 987, 995 (7th Cir. 1997); United States v. Lane, 194 F. Supp. 2d 758, 781 (N.D. Ill. 2002), *aff'd* 323 F.3d 568, 579 (7th Cir. 2003). Evidence is inextricably related when its absence "would create a chronological or conceptual void in the story of the crime." United States v. Hughes, 213 F.3d 323, 329 (7th Cir. 2000) (quoting United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir. 1995)).

Under those standards the evidence of drug transactions did not constructively amend petitioner's indictment because it provided the jury with a complete picture of events by explaining the relationships between the parties and thus was inextricably intertwined with

the charged offenses. Lewis acknowledged that he was familiar with petitioner before the

abduction. During trial, when he was asked the basis of their acquaintanceship, he replied

that he acted as a courier for Jimmerson and that, in that role, he had delivered cocaine to

petitioner. Defense counsel objected to the testimony but we overruled, stating that the

testimony was "being offered solely for the purpose of establishing relationships and who knew

whom and so forth," and that "there are no charges in the indictment relating to narcotics, and

that is not the subject of this lawsuit" (tr. at 179-80). In addition to showing that we supplied

the jury with appropriate limiting instructions, that excerpt also shows that counsel objected

as soon as drugs were mentioned in the same breath as his client's name. Similarly, the

following excerpt from Marks's testimony on direct shows that counsel actively sought to

prevent potential prejudice to his client:[3]

> Q: While you were selling drugs during this period beginning in July 1998, where were
> you getting the drugs from?
> A: Excuse me?
> Q: Where were you getting those drugs that were you [sic] selling from?
> A: Terrance.
> Q: Terrance who?
> A: McClurge.
> Mr. Tunick: Objection, Judge.
> The Court: Again, this is for the purpose of setting forth relationships, and this isn't
> a drug case.

(*Id.* at 674). That testimony helped establish the "formation, nature, and duration of the

relationship" between Marks and petitioner.[4]  Cusimano, 148 F.3d at 828 n.2. Similarly, in

United States v. Hughes, 213 F.3d 323, 329-30 (7th Cir. 2000), *vacated on other grounds* 531 U.S.

---

[3] "Mr. Tunick" is James D. Tunick, petitioner's counsel at trial.

[4] As the prosecutor explained during a sidebar, "I would be happy not to go into the other drugs that
[Marks] got from [petitioner], but right after getting out of prison in July, [petitioner] fronted [Marks] a kilo
of crack which then Marks was unable to pay back by December, and it was partly in exchange for the
forgiveness of that debt that Marks agreed to do this, to take part in the kidnapping" (tr. at 677).

975 (2000), the court found no constructive amendment when the references to uncharged criminal activity established the relationship between the government's witnesses and the defendant. Additionally, the evidence to drug deals between Marks and petitioner also figured into petitioner's defense theory. During his cross examination of Marks, petitioner's counsel queried, "And it was your idea to come up with the kidnapping because you owed [petitioner] money, isn't that true, sir?" (tr. at 981).

The brief references to drug transactions during trial did not expand the potential grounds for conviction. And our instructions to the jury did not allow for a conviction based on the petitioner's past as a drug dealer. Petitioner was convicted of the same offenses that were charged in the indictment, which precludes a constructive amendment. United States v. Patterson, 348 F.3d 218, 227 (7th Cir. 2003). Thus, there is no ineffective assistance of counsel based on petitioner's argument that counsel should have addressed the issue of constructive amendment because there was no constructive amendment. Petitioner's notion that we failed to give limiting instructions fails in light of the two above-quoted excerpts.[5] Further, counsel's repeated attempts to keep evidence of drug transactions from the jury indicates that his performance was not ineffective.

In his next argument, petitioner argues that counsel was ineffective for not correcting the alleged perjury of Lewis and Marks, and for allowing the prosecutor to make improper comments during closing argument. Petitioner points to specific pages in the transcript, but he does not explain what is perjurious in the testimony. Neither does he share with us what the testimony should have been, nor does he discuss how that testimony would have altered

---

[5] Also, "under the "intricately related" doctrine, the court is not required to give a limiting instruction at the time of the admission of evidence or as part of the charge to the jury." Cusimano, 148 F.3d at 829.

the outcome at trial. It is not enough to list pages in the transcript and claim, without any discussion or support, that they are rife with perjury. Further, petitioner does not state that counsel knew or had reason to know that the testimony was perjurious. Counsel cannot be ineffective in these circumstances.

Petitioner next contends that counsel was ineffective for not objecting to comments that the prosecutor made during his closing argument. Petitioner believes that counsel should have objected when the prosecutor described parts of Carlisle's and Alvertis McClurge's testimony as lies and also when he supported Lewis's testimony. Petitioner does not and cannot fault the prosecutor's treatment of his own testimony because petitioner did not testify.

After reviewing the transcript pages cited by petitioner, we see no improper comments made by the prosecutor.[6] The prosecutor's argument relied on inferences made from the evidence. *See* United States v. Spivey, 869 F.2d 461, 466 (7th Cir. 1988) ("The government is free to draw any reasonable inference from the evidence adduced at trial and may also comment on the credibility of a witness, including the defendant."). Relying on the evidence, the prosecutor has the latitude to severely criticize the defendant's case. *See* United States v. Durham, 211 F.3d 437, 440 (7th Cir. 2000) ("so long as the evidence supports the comments, prosecutors may speak harshly about the actions and the conduct of the accused."). At no time during his argument did the prosecutor personally vouch for any witness, nor did he allude to evidence not presented to the jury in order to bolster or detract from witness credibility. *See* United States v. Renteria, 106 F.3d 765, 767 (7th Cir. 1997).

Counsel was not ineffective for choosing not to object under these circumstances because the prosecutor's comments were permissible. Even if counsel was ineffective,

---

[6] Petitioner cites the following pages: 1526-27, 1532-34, 1536-37 and 1539.

petitioner fails to show prejudice. He only addresses that critical element of the <u>Strickland</u> standard with one sentence: "The prejudicial impact of this action warrants remand of petitioner's case for a new trial." That bald assertion falls far short of showing that the outcome would have been different had counsel objected during closing argument.

In his next argument petitioner states that counsel was ineffective for failing to move for a new trial after the lead prosecutor, Stuart Fullerton (Fullerton), filed an affidavit in which he acknowledged committing an error during cross examination of a witness. After the trial had concluded, but before petitioner was sentenced, Fullerton filed an affidavit in which he admitted that he made a mistake during his cross examination of defense witness Andrew Traeger. Fullerton explained that he attempted to show that Traeger harbored bias against cooperating witnesses because he had been convicted of an unrelated crime based partly on cooperating witness testimony. While questioning Traeger, Fullerton stated that one of those cooperating witnesses testified under a grant of immunity, but that witness was not actually immunized. Fullerton blamed his misstatement on his "erroneous recollection."

On January 24, 2001, petitioner filed a motion for a new trial based in part on Fullerton's affidavit. We denied that motion on February 21, 2001. Counsel was not ineffective under these circumstances, and even if he was, petitioner does not attempt to show prejudice.

In petitioner's next argument he attacks his trial counsel on two fronts. First, he argues that trial counsel was ineffective for not initiating forensic tests of the currency and verifying the compatibility of walkie-talkie earpieces. Next, he claims that his counsel failed him by not calling Antwon Eiland as a witness.

Turning to the first argument, during its examination of Lewis the government

introduced currency into evidence and argued that it was the money petitioner gave to Lewis when he left him in Detroit. Petitioner claims his trial counsel was ineffective for not testing the currency to ensure that petitioner actually handled it. However, even if forensic testing would have cast doubt on the identity of the currency, that uncertainty would not overshadow the substantial evidence piled against petitioner, such as Lewis' voice identification of his captor and the testimony of Marks, Cannon, and Alvertis McClurge, who all pointed to petitioner as the ringleader. The currency was not the linchpin in the government's case and the failure to conduct forensic tests was not unreasonable.

With respect to the compatibility of the earpiece, petitioner communicated with Marks with a set of walkie-talkies. Those walkie-talkies came with several pieces of equipment, including earpieces. When Marks was on the witness stand, the government showed him an earpiece and Marks stated that it was similar but not the same as the earpiece that they used (tr. 741). Petitioner's counsel objected to the use of the earpiece, but we allowed the government to proceed on the basis that Marks did not testify that it was the same earpiece (*id.* at 742). In addition to the earpiece that he did not use, there was also a separate head piece that Marks testified he actually used (*id.* at 809). When the government attempted to submit the earpiece into evidence, petitioner's counsel objected and after a sidebar we admitted the earpiece into evidence (*id.* at 811-12). Petitioner does not explain how trial counsel was ineffective here. Counsel argued strenuously against the admission of the earpiece into evidence, objecting several times in open court and during a sidebar. Further, petitioner does not discuss how he was prejudiced. It is clear from Marks' testimony that it was not the same earpiece, and we admitted it into evidence based on that "limited identification" (*id.* at 811). In sum, counsel was not ineffective for failing to investigate the currency or the earpiece.

Petitioner next focuses on counsel's decision not to call Eiland as a witness. According to petitioner, had counsel called Eiland to the stand, Eiland would have testified in his favor and "firmly determined if Markus Marks was eliciting perjured testimony." Petitioner again claims prejudice, without explaining how the outcome at trial would have been different had Eiland testified. According to the government, petitioner is not entitled to relief because "deciding not to call a witness is a tactical decision that is not subject to review." That position warrants a brief aside before we turn to petitioner's claim. A decision is "strategic" and is virtually not subject to review only if it is made after a comprehensive investigation. The Supreme Court emphasized that point in Strickland: "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. Thus, if a decision not to call a witness is not supported by reasonable investigation, it is not immune from review.

Having highlighted the error in the government's position, we now address petitioner's argument. In order to demonstrate prejudice on a claim for failure to investigate or failure to call a witness, petitioner must make a "comprehensive showing as to what investigation would have produced." United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir. 1987); see also United States v. Olson, 846 F.2d 1103, 1109-10 (7th Cir. 1988). As noted above, petitioner fails to show that the absence of Eiland's testimony caused him prejudice. Petitioner directs us to two pages in the transcript in which Marks mentioned Eiland. First, Marks said that Eiland was present for a conversation during which petitioner discussed a potential kidnapping. The extent of the testimony on the conversation is as follows:

Q: Can you tell us what you remember being said on the subject of kidnapping?
A: Well, [petitioner] was like the man. After we met over there, this—our crew
   right here, we is the gorillas, we the ones going to make the stuff happen.
Q: You understood him to be referring to kidnapping?
A: Yeah.

(tr. 680). Petitioner does not explain what Eiland would have said about this conversation.

Petitioner next points us to testimony when Marks denied that he told Eiland that petitioner

had committed a kidnapping. During cross examination by Carlisle's counsel, Marks testified:

Q: Now, sir, you saw what's written there, sir. The question I have, sir, is do
you remember telling Antwon Eiland that Curtis and [petitioner] had kidnaped
somebody?
A: I never told him that.

*Id.* at 970. If petitioner believes that Eiland would have contradicted Marks, then Eiland's

testimony here would have supported the view that petitioner played a key role in the crime.

Under these circumstances, petitioner's decision to not call Eiland was reasonable.

There are other reasons why keeping Eiland off the stand was a reasonable choice.

Marks invoked his Fifth Amendment right to remain silent when asked by trial counsel: "In

fact, you covered up crimes for Antwon Eiland before, haven't you?" and "In fact you and

Antwon Eiland have engaged in other kidnappings, haven't you?" (tr.975). It would be poor

strategy for counsel to call Eiland after disparaging his character. These questions would have

supplied a basis for the prosecution's cross examination of Eiland and also would have

complicated, perhaps even prevented, counsel's efforts to portray Eiland as a credible witness.

Upon evaluating trial counsel's decision not to call Eiland, from his "perspective at the time"

of trial (Strickland, 466 U.S. at 689), counsel acted reasonably and appellate counsel was not

deficient for failing to raise this issue on appeal.

Lastly, petitioner argues that counsel was ineffective for not challenging the career

offender enhancement that he received.  According to petitioner, he should not have received

that enhancement because the government failed to prove that a predicate offense, which was

possession of a controlled substance with the intent to deliver, was an offense subject to over

one-year imprisonment, as defined in U.S.S.G. § 4B1.1. Petitioner claims that the enhancement

is inapplicable and that he should be resentenced under the appropriate range.

Prejudice is established if petitioner can demonstrate that counsel's errors led to

increased jail time.  United States v. Glover, 531 U.S. 198, 203 (2001) ("our jurisprudence

suggests that any amount of actual jail time has Sixth Amendment significance."). Thus, the

critical issue is whether counsel erred at sentencing.

Career offender status under section 4B1.1(a) exists when three conditions are present:

(1) the defendant was at least 18 when he committed the offense for which he currently faces

sentencing; (2) that offense is a felony and is a crime of violence or a controlled substance

offense; and (3) the defendant has at least two prior felony convictions that fall under the

crime of violence or controlled substance categories.   With respect to the third condition,

"prior felony conviction" is defined in relevant part as, "a prior adult federal or state

conviction for an offense punishable by death or imprisonment for a term exceeding one year,

regardless of whether such offense is specifically designated as a felony and regardless of the

actual sentence imposed." Section 4B1.2 cmt. n.1.

Neither of the first two conditions are at issue.  Petitioner argues that his prior

conviction for possession of a controlled substance with intent to deliver was not a prior felony

conviction because it was not shown to be an offense punishable by a term of imprisonment

exceeding one year.  The sentencing report states that defendant was charged with and pled

guilty to possession of a controlled substance with the intent to deliver less than ten grams of

heroin, an offense in violation of Chapter 56.5 § 1401(d). That section is currently codified at 720 ILCS 570/401(d). *See* People v. Smith, 275 Ill. App. 3d 844, 656 N.E.2d 797, 799, 212 Ill. Dec. 200 (Ill. App. 2d Dist. 1995). Violations of 720 ILCS 570/401(d) are Class 2 felonies, which include a term of imprisonment ranging from 3 to 7 years. *See* 730 ILCS 5/5-8-1(b). Petitioner's prior conviction under that section is thus a "prior felony conviction" under the sentencing guidelines, and it may serve as a predicate offense for the career offender enhancement. Petitioner's counsel was not ineffective for not challenging this issue.

We also find no merit in any ineffective assistance of counsel claims that petitioner has against appellate counsel. Petitioner directs no specific argument against appellate counsel that is distinct from those against trial counsel. Indeed, petitioner only mentions appellate counsel in the headings of his first two issues. Nevertheless, appellate counsel was not ineffective because the issues petitioner includes in his petition are considerably weaker than those actually raised on appeal. *See* Lee v. Davis, 328 F.3d 896, 900-01 (7th Cir. 2003). Further, petitioner cannot demonstrate prejudice, as no issue in his petition would "have resulted in a reversal of the conviction, or an order for a new trial." Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001) (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)).

## CONCLUSION

For the foregoing reasons, we deny the petition and decline to grant petitioner a new trial or an evidentiary hearing.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____Dec. 10_____, 2004.